James J. Davis, Jr., AK Bar No. 9412140
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
Tel: (907) 308-3395
Fax: (866) 813-8645
Email: jdavis@njp-law.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EVAN DENTY,<br><br>   Plaintiff,<br><br>vs.<br><br>ASRC ENERGY SERVICES – HOUSTON CONTRACTING COMPANY, INC.<br><br>   Defendant. | **COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>Case No. 4:23-cv-00024-JMK |

COMES NOW, Plaintiff Evan Denty, by and through counsel, the Northern Justice Project, LLC, and alleges and requests relief as follows:

## INTRODUCTION

1. This action arises under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of the "Trans Alaska Pipeline Maintenance and Construction Agreement" (the "CBA"), a collective bargaining agreement between the United Association of Plumbers and Pipefitters, Local Union 375 ("Local 375") and Defendant ASRC Energy Services - Houston Contracting Company, Inc. ("AES-HCC"). AES-HCC breached the CBA by suspending and ultimately terminating Plaintiff Evan Denty without just cause. AES-HCC then repudiated the CBA's grievance procedure and purposefully misclassified Denty—an experienced pipefitter and

project superintendent—as a "clerical" worker in an attempt to circumvent the protections of the CBA. This complaint seeks declaratory and injunctive relief as well as damages.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this lawsuit pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1331.

3. Venue lies in this judicial district pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff is a journeyman pipefitter and a member of Local 375 who lives and works in Fairbanks, Alaska.

5. Defendant is an Alaska corporation that employed Plaintiff and other members of Local 375 to perform pipeline construction and maintenance work. Defendant's principal offices are located at 3900 C Street, Suite 602, Anchorage, Alaska, 99503.

6. Defendant is an "employer" within the meaning of 29 U.S.C. §§ 152(2) and 185.

## FACTUAL ALLEGATIONS

### The Collective Bargaining Agreement

7. AES-HCC and Local 375 are parties to the CBA. The CBA governs maintenance and construction work performed by AES-HCC on the Trans Alaska Pipeline System (the "Pipeline").

8. The CBA's effective dates are January 1, 2020 through December 31, 2024. A true and correct copy of the CBA is attached as Exhibit A and is incorporated herein by reference.

9. The CBA applies to all maintenance, new construction, and demolition work on the Pipeline, including "all associated support work." Art. II, § 1. The CBA covers all employees

hired to perform this scope of work except "clerical" workers and "supervisors," as defined by the National Labor Relations Act, 29 U.S.C. § 152(11). Art. V, § 1.

10. The CBA provides that a covered employee may not be fired except for "just cause" and requires that the employer provide a termination slip "stating the specific reason for termination or layoff." Art. XV, § 1. The CBA also requires that the employer allow the Union Representative to discuss the discharge of any covered employee. *Id.*

11. The CBA outlines a mandatory grievance procedure for any disputes arising under the terms of the CBA, including grievances relating to the layoff, suspension, and discharge of covered employees. Art. XVII, § 1.

12. As a member of Local 375 hired by AES-HCC to perform work under the CBA, Denty is covered by the CBA and a third-party beneficiary of the CBA.

<u>Plaintiff's Employment and Termination</u>

14. Denty is a highly skilled journeyman pipefitter and a member of Local 375. Denty has over twenty years of construction experience in various roles, including as a pipefitter, cost estimator, and project manager. He holds an Associate Degree in Construction Management from University of Alaska Fairbanks, with certificates in Commercial Plumbing Inspection and Commercial Mechanical Inspection. Prior to working at AES-HCC, Denty was a Field Engineer and Cost Controls Analyst at the Clear Space Force Station.

15. On or around June 2020, Denty began employment with AES-HCC as a journeyman pipefitter to provide maintenance and construction work on the Pipeline. In addition to pipefitting, Denty performed estimating work and filled in for the General Foreman and Project Superintendent as needed.

16. On or around July 8, 2021, Denty was promoted to "Project Superintendent/Lead Estimator." On information and belief, AES-HCC classified Denty as a "Project Supervisor" in its payroll system. The position was based in AES-HCC's Fairbanks office, with occasional field work.

17. Denty was paid a day rate of $425 based on a five-day work week, which resulted in an annual salary of approximately $110,500. Denty did not receive overtime pay. AES-HCC contributed fringe benefits on behalf of Denty to Local 375's defined benefit pension and health and welfare trusts, and it deducted Local 375 working assessments from each of Denty's paychecks.

18. At the time of hire, Denty reported directly to AES-HCC Operations Manager, Rolf Mey. Rolf Mey reported to Gregory Campbell, the Operations Director and President of AES-HCC.

19. As Project Superintendent/Lead Estimator, Denty provided accurate and detailed project cost estimates to AES-HCC Project Managers, leadership, and clients. Using his expertise in pipefitting and data analysis, Denty would compile and review estimates provided by Project Managers across projects and crafts. Denty would analyze the estimates for both accuracy and consistency, taking into account the project's schedule and historic cost data. He would then translate the individual estimates into a single, uniform estimate for the entire project. For smaller projects, Denty would independently prepare cost estimates. In addition to leveraging his training as a pipefitter, Denty's work required technical expertise in Computer Assisted Design (CAD), Microsoft Excel, and other data management tools.

4

20. Denty would send estimates to the Project Manager and Operations Manager, who would review and ultimately sign-off on the estimates. Denty would then send the estimates to AES-HCC's client and field any questions from the client regarding the estimates.

21. During the winter months, as AES-HCC's construction projects slowed, Denty would use his expertise in data management and estimating to support the overall operations of AES-HCC. This work included data analysis and improving AES-HCC's internal processes (for example, modernizing the estimate templates).

22. Although Denty never received a formal performance review, he consistently received positive feedback from his supervisors and colleagues. Denty performed his job well, and he was never written up or otherwise disciplined.

23. On or around April 1, 2023, Sam Moore replaced Rolf Mey as Operations Manager and became Denty's immediate supervisor.

24. Moore began changing Denty's workload and responsibilities. At first, Moore told Denty that he would independently create and take responsibility for all civil and mechanical estimates. A few days later, in an apparent reversal, Moore told Denty that he would continue to review estimates provided by the Project Managers.

25. Denty was also asked to maintain and distribute the Pipeline Work List, a managerial tool that tracked the status of estimates, approvals, and deadlines across AES-HCC's projects. This task was historically done by the Operations Manager as a way to supervise AES-HCC's pipeline operations.

26. To clarify his evolving duties, Denty asked Moore to draft a list of his responsibilities as Project Superintendent/Lead Estimator, so that Denty and Moore could confirm his role within the team.

27. Around that time, Denty spoke with Greg Campbell about receiving a raise. On or around April 18, 2023, Campbell offered Denty a seven percent raise, which would increase Denty's annual pay to approximately $118,000. Rather than receive a day rate, Denty would become an exempt, salaried employee. The raise would not change Denty's position as a Project Superintendent/Lead Estimator.

28. On April 19, 2023, Moore came into Denty's office and presented Denty with a document purporting to outline his responsibilities as Project Superintendent/Lead Estimator. Moore asked that Denty sign the document immediately. Denty responded that he wanted some time to review the job description before signing it. Moore raised his voice and demanded a signature from Denty. Denty asked if he could record the conversation. This request further agitated Moore, who told Denty not to record anything. Denty asked if a representative from Human Resources could be present for their conversation. Moore said no. Moore began yelling at Denty to "do what he is told" and immediately sign the document. At this point, Denty told Moore that he was not comfortable continuing the conversation. Moore snatched the document out of Denty's hand and stormed out of his office.

29. Approximately twenty minutes later, Moore placed Denty on unpaid administrative leave. Moore demanded that Denty exit the premises immediately, and Denty was not allowed to take his personal belongings with him.

30. That same day, Local 375 contacted AES-HCC to inquire about Denty's de facto suspension and to request a write-up of the incident. On April 20, 2023, Greg Campbell, President of AES-HCC, responded that "Mr. Denty's employment is not covered under the collective bargaining agreement, and we do not discuss internal HR issues with outside entities. Mr. Denty has avenues within the AES HCC HR department to pursue any question he may have regarding

his status." When asked for clarification, Campbell elaborated that AES-HCC had a "long-standing practice of hiring staff employees on an at-will basis to support TAPS work," and that Denty was an at-will "staff employee" governed by AES-HCC's corporate policies and procedures. Campbell explained that AES-HCC considers all "staff hires" to be either clerical workers or supervisors and therefore excluded from the CBA. This suggests that AES-HCC may be engaging in systemic violations of the CBA through its practice of "staff hires."

31. Denty did not and has never received a write-up about the incident or any documentation that articulated the reasons for his suspension.

32. On June 6, 2023, Local 375, via counsel, informed AES-HCC that Denty was covered by the CBA and that both Denty's suspension and AES-HCC's refusal of the grievance process violated its provisions.

33. On June 19, 2023, AES-HCC took the position that Denty was not covered by the CBA because he was a "clerical" employee.

34. On July 14, 2023, the parties met in an effort to resolve this dispute. There was no resolution.

35. On July 24, 2023, Local 375, via counsel, contacted AES-HCC to demand that the matter proceed via the CBA's grievance policy. AES-HCC again refused, reiterating its claim that Denty was excluded from the CBA because he was a "clerical" worker.

36. On August 24, 2023, AES-HCC terminated Denty without written explanation.

**FIRST CAUSE OF ACTION:**
**BREACH OF LABOR CONTRACT IN VIOLATION OF 29 U.S.C. § 185**

37. The allegations in Paragraphs 1 through 36 are re-alleged and incorporated herein by reference.

38. The CBA between Local 375 and AES-HCC is a "contract[] between an employer and a labor organization representing employees in an industry affecting commerce" within the meaning of 29 U.S.C. § 185 and as defined by 29 U.S.C §§ 142 and 152.

39. Denty was hired by AES-HCC to perform work covered by the CBA, including "associated support work" for AES-HCC's construction and maintenance on the Pipeline.

40. AES-HCC contents that Denty is not covered by the CBA because he was a "clerical" worker, but Denty was not a "clerical" worker under any reasonable definition of the term. In fact, Denty was and is covered by the CBA.

41. AES-HCC violated the CBA by terminating Denty without just cause and without a written explanation as required by Article XV, Section 1.

42. AES-HCC violated the CBA by refusing Denty the ability to grieve his suspension and termination as required by Article XVII.

43. Denty repeatedly attempted to exhaust his remedies under the CBA.

44. AES-HCC consistently denied Denty's requests to follow the CBA's grievance procedures, and it repudiated the CBA with respect to Denty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Find that Plaintiff's employment at AES-HCC is covered by the terms of the CBA;

(2) Find that AES-HCC breached its contractual obligations under the CBA by terminating Plaintiff without just cause;

(3) Find that AES-HCC breached its contractual obligations under the CBA by refusing to follow the grievance procedures outlined in Article XVII;

(4) Award actual, compensatory, and punitive damages against the Defendant;

(5) Award the costs and expenses of litigation, including attorney fees;

(6) Order any and all other relief as the Court deems necessary.

Dated: 10/19/2023    Respectfully submitted,

_____/s/ James J. Davis, Jr._____
James J. Davis, Jr., AK Bar No. 9412140
NORTHERN JUSTICE PROJECT, LLC
406 G Street, Suite 207
Anchorage, AK 99501
Tel: (907) 308-3395
Fax: (866) 813-8645

# **REQUEST FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: 10/19/2023            Respectfully submitted,

                                       _____/s/ James J. Davis, Jr._____
                                       James J. Davis, Jr., AK Bar No. 9412140
                                       NORTHERN JUSTICE PROJECT, LLC
                                       406 G Street, Suite 207
                                       Anchorage, AK 99501
                                       Tel: (907) 308-3395
                                       Fax: (866) 813-8645